The Court finds that a bond in the amount of $500,000 shall be posted by Plaintiffs.

**NATIONAL UTILITY SERVICE, INC., Plaintiff,**

v.

**CALLAHAN MINING CORPORATION, Defendant.**

**No. C-89-2358-VRW.**

United States District Court, N.D. California.

Dec. 3, 1990.

George C. Harris, Morrison & Foerster, San Francisco, Cal., for plaintiff.

Richard H. Wise, Mullins & Wise, San Francisco, Cal., for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

WALKER, District Judge.

Plaintiff National Utility Service ("NUS") brings this action to recover payment for services rendered in connection with a contract between it and the defendant, Callahan Mining Corporation ("Callahan"). NUS was hired to review the electricity bills for one of Callahan's underground silver exploration projects in Idaho in an effort to reduce the project's energy costs. In addition to receiving a fixed fee for the service, NUS was to receive 50% of any refund or savings that it identified. The relevant portions of the contract read as follows:

1. We [Callahan] authorize you [NUS] to submit recommendations for all possible savings and refunds on our costs of electricity * * * You will make a detailed analysis of all factors in our costs and advise where refunds and reductions can be obtained. * * *

3. Any recommendation you make is subject to our approval. Any recommendation acted upon by us shall be deemed accepted and if implemented, we will pay you as outlined below after such savings and refunds are achieved. * * *

5. We agree to pay you as follows: * * *

b. After recapture of our service fee we will pay you fifty (50%) percent of each savings secured for a period of sixty (60) months after which the entire savings will be ours.

NUS recommended, among other things, that Callahan ask its electric company, Washington Water Power, Inc. ("WWP") to switch Callahan from its Large General Service Rate Schedule 21 to its Extra Large General Service Rate Schedule 25. Unbeknownst to NUS, however, Callahan had already asked WWP for the lower rate, and the WWP officials in charge of the account had promised to monitor Callahan's electricity usage to determine whether Callahan qualified. At the time NUS made its recommendations, however, WWP had not yet granted Callahan's request. Callahan officials decided to send WWP a letter written by NUS again requesting the lower rate. Approximately three months after receiving the letter, WWP switched Callahan to Schedule 25, generating substantial savings. NUS seeks partial summary judgment that it is entitled to 50% of the savings from the switch.

Callahan contends that the contract should be read to require proof of a causal relationship between NUS's advice and the savings achieved before NUS is entitled to a percentage of the savings. It argues that the 50% payment clause should be interpreted as a bonus system which requires some causal nexus between NUS's efforts and the savings before NUS can recover its 50% bonus. Callahan also argues that it would be unreasonable to construe the contract to give NUS a windfall for a fortuitously timed but unbeneficial recommendation.

Both of Callahan's arguments are undercut by the language of the contract. Under the contract, Callahan, not NUS, was responsible for implementing the recommendations to achieve savings. The 50% "bonus" was not intended to compensate NUS for actually achieving the savings, but to give NUS an incentive to make profitable suggestions. Callahan got the advice that it bargained for and implemented NUS's suggestions as provided in the contract. NUS performed its part of the bargain.

Contrary to Callahan's contention, the contract did not automatically award NUS a bonus for making fortuitously timed suggestions which were already under review by Callahan or WWP. Any recommendation made by NUS was subject to approval by Callahan. If Callahan believed that it had already taken all the steps necessary to obtain the Section 25 Rate, it should have rejected NUS's recommendation, as it had a right to do by virtue of the approval clause.

The contract stated that "[a]ny recommendation acted upon by [Callahan] shall be deemed accepted and if implemented" NUS became entitled to the savings payment. Callahan's use of NUS's letter indicates approval or acceptance of NUS's recommendation.

Contracts in the real world never achieve the theoretical idea of complete contingency. The degree of a contract's specificity usually reflects the transaction costs involved in nailing down every contingency. When, as here, a situation arises which is not expressly governed by the explicit terms of the contract, the court must recast the terms to which the parties would (or should) have agreed if negotiation costs had been zero. It seems plain that the present contract should be interpreted to afford NUS payment. Several factors lead to this result.

First, Callahan was in a far better position to know the status of its request to WWP, and could have either excepted any savings resulting from a switch in rate

schedules from the contract or rejected any suggestion relating to the switch. Because the full facts were more readily (and cheaply) available to Callahan, NUS should not be saddled with costs that arise from its not being fully informed. Second, it is not inconceivable that Callahan made the agreement with NUS simply to obtain a recommendation for use as a bargaining chip with WWP, and then to stiff NUS. Whether Callahan had such a motive (which Callahan would undoubtedly deny), its causation theory if applied as a rule of law in situations such as this would permit a contracting party to engage in such shenanigans. Third, Callahan bargained for recommendations, not savings. NUS was not in a position to give Callahan savings, only information. The situation is not unlike an attorney's contingent fee contract, by which the attorney agrees to perform legal services in return for a percentage of the recovery, even though the recovery will depend on factors other than the attorney's effort.

Therefore, having read the papers submitted by the parties and having heard argument by counsel, partial summary judgment on the issue of liability is GRANTED in favor of plaintiff.

IT IS SO ORDERED.